## McDonald *v*. Shaw.

### Opinion delivered July 12, 1909.

1. WILLS—ELECTION—WHEN REQUIRED.—An election in equity is a choice which a party is compelled to make between the acceptance of a benefit under an instrument and the retention of some property already his own which is attempted to be disposed of in favor of a third party by the same instrument. (Page 20.)

2. SAME—NECESSITY OF ELECTION.—It is not material, in determining whether a party is put to an election, that the testator, in disposing of that person's property, was in error as to its ownership, or that the testator in fact knew that he had no title to it; in either case if the party whose property is given away decides to take against the will, he must relinquish his legacy under the will. (Page 21.)

3. Same—parol evidence inadmissible.—Where a testatrix, being seized of real and personal property, devised a one-half interest in all of her estate, real and personal, to her daughter, subject to certain legacies and bequests, and left the other half of her property to another, it is not admissible to show by parol evidence that the testatrix believed that she owned certain property which in fact belonged to her daughter; the rule being that the purpose to put the devisee to an election must appear from the will itself. (Page 21.)

4. Same—when election made for infant.—The court will make an election for an infant or other incompetent person only when it becomes necessary to do so. (Page 26.)

5. Same—election.—As the basis of the doctrine of election is that a person cannot assume two inconsistent positions—cannot accept and reject under the same instrument—it follows that in case of election a person can be required to give up that which is his own only to the extent that it is necessary to relieve his position of inconsistency. (Page 27.)

6. Equity—jurisdiction to give complete relief.—Where equity assumes jurisdiction of a cause for one purpose, it should retain it for the purpose of completely adjudicating the rights of the parties concerning the subject-matter of the controversy. (Page 28.)

Appeal from Sebastian Chancery Court; *J. Virgil Bourland,* Chancellor; reversed.

*Winchester & Martin,* for appellant.

1. The will of John Hare was void, as his only child was not mentioned in his will. His child took title to all his real estate at his death as his only heir. Kirby's Dig., § 8020; 23 Ark. 569; 70 *Id.* 483.

2. The doctrine of election can not be invoked. In order to create the condition for an election, it must clearly appear that the testator undertakes to dispose of some property belonging to the person called upon to elect. 2 Jarman on Wills, p. 1, Am. Notes by Randolph & Talcott; Story, Eq. Jur., § 1075; 41 Ark. 69.

2. It is immaterial whether the testator, in disposing of that which is not his own, is aware of his want of title, or proceeds on the erroneous supposition that he is exercising a power that belongs to him. In either case whoever claims in opposition to the will must relinquish what the will gives him. But the intent of the testator to dispose of that which is not his must appear in the will. 1 Vesey, Jr., 523; 4 Dow. 76, 89, 90; 2 Jarman on Wills, pp. 15, 16, 17; Story, Eq. Jur., § § 1086, 7-8-9; 15 N. Y. 365; 2 Johns. Ch. 448; 41 Ark. 69; 70 Pa. St. 269;

2 Beach, Mod. Eq. Jur., § 1071; L. R. 5 Ch. Div. 163; 13 How. (U. S.) 385; 8 Bing. 248; 5 Dana (Ky.) 351.

3. Parol evidence is not admissible, and no case was made for an election. Authorities *supra.*

*Read & McDonough, Brizzolara & Fitzhugh, Youmans & Youmans,* and *Joseph M. Hill,* for appellees.

1. The facts of this case require that Ella Hare should elect as to whether she will take under the will of her mother or reject the provisions and claim as heir to her father. Story, Eq. Jur., § 1075; Underhill on Law of Wills, § 726; Adams, Eq. 93; 62 Am. Dec. 205; Pom. Eq., p. 431; 1 Dana (Ky.) 203-4; 7 S. W. 309; 77 N. C. 421; 48 S. E. 676; Story, Eq. Jur. 1096; 21 N. C. 634; 48 S. E. 675; 79 N. Y. 136.

2. The intention of Mrs. Hare to devise by will the property devised to her by her husband, as well as the property accumulated by her, can be shown by testimony *dehors* the will. Underhill on Wills, § 734; 24 Tex. 652; Wigram on Wills (3 Ed.), 53; 68 Pa. St. 479; 98 U. S. 315; L. R. 5 Ch. Div. 163; 41 Ark. 64; Bisp. Eq., § 295; 1 Lead. Cas. in Eq. 342; Story, Eq. Jur., § 1076; 2 Redf. on Wills, 745.

*Ira D. Oglesby,* for Ella Hare.

1. There is no intention of election expressed in the will, or from which it must arise, and testimony *dehors* the will was not admissible to make a case for election. Underhill on Wills, p. 1101; 41 Ark. 6; 70 *Id.* 483; *Ib.* 374; 65 Pa. St. 451; 15 N. Y. 370; 16 N. J. Eq. 189; 76 Va. 809; Pom. Eq. 472-489; Story Eq. 1087; 7 S. W. 309; Underhill on Wills, § § 726 to 734.

*Joseph M. Hill,* for appellees.

1. Extrinsic circumstances should be admitted in order to properly interpret the will. 4 Wigmore on Ev., § 2462-3-7, 2470, etc.; 41 Ark. 64.

2. The extrinsic circumstances show that Mary Hare intended to dispose of the estates owned by herself and Ella Hare. 2 Redf. Wills 745.

McCulloch, C. J. Ella Hare, who is and has been since she was an infant of tender years an imbecile, instituted separate actions by her guardian against certain defendants to recover possession of real estate in the city of Fort Smith, title to which is

asserted for her by inheritance from her father, John Hare, who is shown to have owned it at the time of his death. The defendants filed separate answers and cross-complaints, praying tha. the actions be transferred to the chancery court. They each alleged, in substance, that they held the property in controversy, and claimed title thereto by purchase and conveyance, one from the devisee under the last will of Mary A. Hare, mother of Ella Hare, and the others from the administrator of the estate of said Mary Hare; that said Mary Hare by will devised property of her own to Ella Hare, and also devised property of Ella Hare to others, and that said Ella Hare should therefore be put to an election, whether she would take her own property and repudiate her mother's will, or conform to said will and permit the defendants to keep the property conveyed to them. The prayers of the cross-complaints were that the court should make such election for Ella Hare on account of her incapacity to elect for herself. The cases were transfererd to the chancery court and consolidated, and on final hearing the court made an election for Ella Hare that she should conform to the will of her mother, thus permitting the defendants to keep the property devised to their grantor. The guardian of Ella Hare appealed to this court.

The facts of the case are practically undisputed. John Hare and his wife, Mary A., came to Fort Smith in 1852. They were members of the Roman Catholic Church, belonging to the parish of the Church of the Immaculate Conception, one of the two Catholic churches of Fort Smith. They had one child, Ella, who was in infancy rendered an imbecile by a stroke of paralysis. She is now about thirty-five years of age, and is unable to walk without assistance or to care for herself, and has but a small degree of intelligence. She is in the care of the Catholic Sisters in a convent at Fort Smith.

When she was a small child, her father died in 1883, leaving an estate consisting of $2,028.05 personal property and a large amount of real estate, which was then valued at $26,000, including the property now in controversy. He left a will devising all his property to his wife, Mary A. Hare, the will being in due form in all other respects but omitting to mention the name of his child or to make any provision for her. Mrs. Hare then owned no real estate.

Among other tracts of land owned by John Hare was one of 470 acres in sections 1 and 2, township 7 north, range 31 west, worth about six or seven dollars per acre. It is admitted that the title to this property was in John Hare; but after his death the record shows that for some reason or other his wife, Mary Hare, accepted a quitclaim deed from one Carnall, describing and conveying the property. It is not shown that Carnall had any title to convey.

The will of John Hare was probated, and Mrs. Hare administered on his estate and closed the same up with an order of the probate court vesting all the above estate of John Hare in her. She exercised acts of ownership over the same after her husband's death. She built houses on some of it and sold some of it.

The evidence tends to show that Mrs. Hare was never advised that the last will of her husband was ineffectual to devise his property to her on account of omitting the name of their child. After her husband's death, Mrs. Hare accumulated personal property which, at the time of her death, was valued at $1,347.87, and real estate valued at $9,800, exclusive of improvements which she had placed on the property owned by her husband. She died in 1893, leaving a will in due form which, in addition to making certain minor bequests, contains the following clauses:

"After all my just debts and funeral expenses are paid, I give and bequeath to the boy Paul, whom I have raised, 80 acres of land described as follows, said 80 to be taken out of my lands I own in township 7 north, range 31 west, the 80 to be in one body, Paul to have choice, and also the sum of one hundred dollars. *   *   *   *

"I give, devise and bequeath to the Convent of the Sisters of Mercy of Fort Smith, known as Saint Ann's Convent, one-half of all my estate, real and personal, after deducting the legacies and bequests mentioned in this my last will and testament, for the support and maintenance of my daughter, Ella Hare, during her life, and after the death of my said daughter, Ella Hare, I give, devise and bequeath to the said Sisters of Mercy the said half of my estate, real and personal, for the purpose to educate poor Catholic children.

"I give, devise and bequeath to the pastor of the parish of the Church of the Immaculate Conception of Fort Smith, in the State of Arkansas, half of all of my estate, real and personal, to be used by the said pastor for the said purposes of helping to establish a school in said parish for the education of Catholic boys and for helping to educate young men of the parish for the priesthood."

This will was construed and its provisions sustained in *McDonald* v. *Shaw*, 81 Ark. 235. "The boy Paul" referred to in the will was Paul Herring, who was an orphan reared by Mrs. Hare.

After the death of Mrs. Hare the Catholic Sisters took charge of Ella, and have given her all the care that loving solicitude could suggest. There is no doubt that they are attempting to carry out the provisions of Mrs. Hare's will in spirit as well as in letter.

Under the statutes of this State (Kirby's Digest, § 8020), the will of John Hare was void as to the child Ella, whose name was omitted therefrom. As to the child, he is deemed to have died intestate, and the title to his property passed to her as the sole heir. There is no disagreement between learned counsel in this case as to the general principles requiring election in cases of this kind. A concise statement of such principles may be found quoted from Bispham's Principles of Equity, § 295, in the opinion of this court, delivered by Mr. Justice SMITH in the case of *Fitzhugh* v. *Hubbard*, 41 Ark. 64, as follows:

"An election in equity is a choice which a party is compelled to make between the acceptance of a benefit under an instrument and the retention of some property, already his own, which is attempted to be disposed of in favor of a third party by virtue of the same instrument. The doctrine rests upon the principle that a person claiming under an instrument shall not interfere by title paramount to prevent another part of the same instrument from having effect according to its construction; he cannot accept and reject the same instrument."

The Virginia Court of Appeals, in *Gregory* v. *Gates*, 30 Grat. 83, states the same doctrine in somewhat different language, as follows: "The doctrine of election may be thus stated: That he who accepts a benefit under a deed or will must adopt the

whole contents of the instrument, conforming to all its provisions and renouncing every right inconsistent with it. If, therefore, a testator has affected to dispose of property which is not his own, and has given a benefit to the person to whom that property belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition; but if, on the contrary, he choose to enforce his proprietary rights against the testator's disposition, equity will sequester the property given to him for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of those rights."

It is further conceded to be settled that "it is not material, in determining whether a party is put to an election, that the testator, in disposing of that person's property, was in error as to its ownership, or that the testator in fact knew that he had no title to it. In either case if the party whose property is given away decides to take against the will, he must relinquish his legacy under the will." 2 Underhill on the Law of Wills, § 736.

The real controversy arises concerning the application of the rules of evidence—whether parol evidence is admissible to show that Mary A. Hare by her will attempted to dispose of property which belonged to Ella Hare as sole heir of her father, John Hare. The defendants claim the right to show, by evidence *dehors* the will of Mary Hare, that she intended by the words in her will "all of my estate, real and personal," to describe the property of Ella Hare; and to do so they adduced parol evidence tending to show that Mrs. Hare claimed to own the property, believed herself to be the owner, and exercised acts of ownership over it. On the other hand, learned counsel for the plaintiff insist on adherence to what they assert to be the settled rule of evidence, that "the intent of the testator to dispose of that which is not his ought to appear on the face of the will itself," and that when it appears that the testator was seized and possessed of property which in fact answered the descriptive words "all of my estate," parol evidence should not be admitted for the purpose of showing, in order to require an election on the part of the devisee, that the testatrix believed she owned other property which in fact belonged to such devisee and intended to devise it by her will. In other words, they insist that where the testator in the will uses merely the general descriptive terms "all of my

property," it may be shown what property she owned, but that the inquiry must stop there. We think that the authorities fully sustain this contention.

This court in *Fitzhugh* v. *Hubbard, supra,* which is clearly in line with all the authorities on the subject, said: "You may show the condition of the subject-matter and the surrounding circumstances so as to place the court in the position of the testator. But his purpose to put the devisee to his election must appear from the will itself."

In *Blake* v. *Bunbury,* 1 Vesey, Jr., 523, which was a case of election under a will, it was said that "the intent of the testator to dispose of that which is not his ought to appear on the will, with such explanation, however, of the *prima facie* appearance as the law admits," meaning, of course, the rule permitting evidence identifying the property called for by the descriptive terms used.

In *Clementson* v. *Gandy,* 1 Keen 309, the substance of the syllabus as follows: "Where the intention to dispose was clearly expressed on the face of the will, and parol evidence was tendered for the purpose of showing that the testatrix had mistaken the amount of the property which she was capable of bequeathing, supposing certain property in which she had only a life interest to be her own, and that a legatee under the will, who also took an interest in such supposed absolute property under a settlement made by the testatrix, ought, in order to enlarge the residuary bequest, to be put to his election, such evidence was held to be inadmissible."

Lord Eldon in *Doe* v. *Chichester,* 4 Dow. 76, which is cited with approval in Jarman on Wills (6th Ed.), vol. 1, p. 469, said: "It must appear on the face of the will that the testator proposes that there should be an election, and as to what subjects."

In *Webber* v. *Stanley,* 16 C. B., N. S., 698, the Court of Common Pleas announced the general rule that under a general devise of "my manor house," and "all of my manor farms, lands," etc., in a certain county, where there was property which fitted every particular of the description, and on which every word of the devise could have full effect, the meaning of the words could not be enlarged by extrinsic proof.

The English cases are discussed at length in Jarman on Wills at the page indicated above, and the prevailing rule shown there as contended for by counsel for plaintiff. An interesting discussion of the subject may also be found in the notes of Hare & Wallace to the case of *Noys* v. *Mordaunt,* beginning on page 510 of White & Tudor's Leading Cases in Equity, vol. 1. They state the prevailing rule, and cite numerous English cases to sustain it, as follows: "In order to raise a case of election there must appear in the will or instrument itself a clear intention on the part of the author of it to dispose of that which is not his own."

The only English case declaring a different doctrine is *Pultney* v. *Darlington,* 2 Ves., Jr., 544, which has been expressly disapproved by many of the greatest judges of that country. The American cases are equally harmonious, and of the same purport.,

In *Havens* v. *Sackett,* 15 N. Y. 365, Chief Justice Denio gives the following statement of the law (quoting from the syllabus) : "In order to raise a case for election under a will, a clear and decisive intention of the testator must be manifested by the will itself to dispose unconditionally of that which did not belong to him. If his expressions will admit of being restricted to some interest in property belonging to or disposable by the testator, they will not be held to apply to that over which he had no disposing power."

In *Miller* v. *Springer,* 70 Pa. 269, Judge Sharswood, speaking for the court, said: "A general devise of the testator's real estate has always been held to show an intention to give what strictly belongs to him, and nothing more, even if the testator had no real estate of his own upon which the devise could otherwise operate. 1 Jarman on Wills, 393. Nor can evidence *dehors* the will be admitted to show that the testator considered the land in question to belong to him, and intended it to pass under the will."

Judge Mitchell, delivering the opinion of the Supreme Court of Minnesota in *Sherman* v. *Lewis,* 46 N. W. 318, laid down the law on the subject, as follows: "The rule is that a general bequest and devise of the testator's property will be construed as intended to extend only to such property as he could dispose of by will. Also that, even where specific property is

disposed of by will, in which the testator had only a partial in-
terest, the courts will, if possible under any reasonable rule of
construction, construe the language of the will as intended to
apply only to the interest which the testator was able to dispose
of; the presumption being that he did not intend it to apply to
that over which he had no disposing power. Also that, in order
to raise a case for an election, the intention as manifested by the
will itself must be clear and decisive. It must be clear, beyond
reasonable doubt, that the testator has intentionally assumed to
dispose of the property of the beneficiary, who is required on that
account to give up his own gift (citing cases). And while parol
evidence is admissible, to the same extent as in other cases, in aid
of the construction of written instruments, that is, to show the
condition of the subject-matter and the surrounding circum-
stances, so far as to place the court in the position of the testator,
yet the intent of the testator to dispose of that which was not
his must appear from the words of the will itself, and cannot be
proved by evidence *dehors* the instrument."

The Virginia Court of Appeals, in *Wootton* v. *Redd*, 12
Gratt. 196 (quoting the syllabus) said: "Though it may be pos-
sible the testator intended to give more, yet, if there be a subject
found to satisfy the description in the will, the court can neither
enlarge nor extend it."

The same court in the case of *Gregory* v. *Gates, supra,* said:
"In order to raise a case of election, there must appear in the
will itself a clear intention on the part of the testator to dispose
of that which is not his own." And again, that court in *Penn* v.
*Guggenheimer,* 76 Va. 839, held that "generally, when the tes-
tator has an undivided interest in certain property, and he em-
ploys general words in disposing of it, as 'all my lands,' or 'all
my estate,' no case of election arises from it; for it does not
plainly appear that he meant to dispose of anything but what was
strictly his own."

Judge Story clearly announced the same doctrine as fol-
lows: "A case of election cannot ordinarily arise where property
is devised in general terms; as a devise of 'all my real estate in
A,' which estate is subject to the claims of a devisee or legatee;
for it is not apparent that he meant to dispose of any property
but what was strictly his own subject to that charge." 2 Story,
Eq. Jur. 1087.

Prof. Pomeroy also reaches the same conclusion.  1 Pomeroy's Eq. Jur., 473, 474.

The diligence of learned counsel has not brought to light a single case directly holding the contrary view.  We assume that there are none.  They rely mainly upon certain general observations of Mr. Wigmore in his work on Evidence, expressing views as to the general growth of the law of evidence on this subject. But that learned author does not undertake to show that the rule announced by the various authorities hereinbefore cited is erroneous.

Counsel also rely to some extent on the decision of this court in *Fitzhugh* v. *Hubbard, supra;* but the doctrine announced in that case by no means reaches to the point raised in this.  There the testator in general terms released the debt of a certain party to him, and it appeared that the only debt which the party had ever owed him was a note which he had previously assigned to the testator's wife, who was also a beneficiary under the will.  It was held competent in that case to show these facts in order to give some effect to the language of the will, otherwise the entire bequest would have been void.

In the present case the devise was for the benefit of Ella Hare, and was in the language, "one-half of all of my estate," and the testator owned property which fitted the language.  We find it nowhere announced that evidence is inadmissible to show the circumstances with which the testator was surrounded in order to explain the language which he used or to identify property which he intended to devise.  But the description of the property cannot be entirely supplied by evidence *dehors* the will, where there is nothing in the language of the will itself to point out what property is meant; nor, where the language does point out the property, and some is found which answers the description, can the description be enlarged by parol testimony.  We are therefore of the opinion that the parol testimony was inadmissible for the purpose of showing that Mrs. Hare intended to convey the property which Ella Hare held by inheritance from her father, and that no case was made out for an election.

It is further insisted by counsel for plaintiff that the devise of 80 acres of land to Paul Herring was a specific devise of property owned by Ella Hare, and that that called for an election.

We do not deem it necessary for the purposes of this case to determine whether the devise to Paul Herring was sufficiently specific to indicate an intention on the part of the testator to devise property which belonged to Ella Hare and which called for an election. If it be conceded that such was the case, the defendants are in no position to demand an election because the position of Ella Hare, the claimant by inheritance from her father, is inconsistent with the rights of Paul Herring. Paul Herring is not a party to this suit, and no controversy has arisen with him. It is the duty of the court to make an election for an infant or other incompetent person only when it becomes necessary. 2 Underhill on Wills, 737. Now, if hereafter the guardian of Ella Hare should, under orders of the court, seek to recover from Paul Herring the property devised to him, then a case for election may arise as to that individual. These defendants can never inject themselves into that controversy and claim the right to require an election because Paul Herring may have the right to demand it. If, in a controversy with Paul Herring, the necessity for an election should arise, the court could either elect for Ella Hare to conform to her mother's will, so far as to leave Paul Herring undisturbed in his right thereunder, or could elect for her to take from him the property so devised, and render compensation to him out of the property devised to Ella Hare under her mother's will. In no event can the other devisee under the will of Mrs. Hare, or the grantees of such devisee, or the purchaser from Mrs. Hare's administrator be interested in that controversy.

If Mary Hare had attempted by her last will to devise to them property which was owned by Ella Hare, then they would be in position to require of Ella Hare an election whether she would abide by the will or repudiate it, but such is not the case. Since we hold that none of the property claimed by them was described in the will, what interest have they in any election made by or for Ella Hare or in requiring her to make an election at all? If an election should be made by or for Ella Hare, that would not involve the property in controversy, which is owned by her, and is not affected by the will of her mother, for, if the court in a proper proceeding should elect for her to abide by the will of her mother, she would only have to relinquish her claim to that portion of her property which is given to others under the will.

That portion of her property which is not covered by the terms of the will, regardless of the source of her title, would not be affected by an election, for her claim to it is not inconsistent with the terms of the will; and she can conform to every provision of the will without relinquishing any of the property in controversy because the testatrix did not by the terms of the will purport to devise it.

The basis of the doctrine of election is that a person cannot assume two inconsistent positions—he cannot accept and reject under the same instrument. *Fitzhugh* v. *Hubbard, supra.* It follows, therefore, that in case of an election a person can be required to give up that which is his own only to the extent that it is necessary to relieve his position of inconsistency.

The chancellor erred in declaring an election. The decree is reversed, and the cause remanded with directions to remand the case to the circuit court for further proceedings not inconsistent with this opinion.

ON REHEARING.

Opinion delivered October 25, 1909.

McCulloch, C. J. Learned counsel for appellees have again argued the questions pressed upon us on the original consideration of the case, but after careful re-examination of those questions we are convinced that we reached the correct conclusion, and the decision is adhered to.

In addition to this, they ask that, instead of giving directions to remand the case to the circuit court, the chancery court be directed to retain the case for further proceedings.

Appellees in their answer claim reimbursement for improvements made on the property in controversy and for taxes paid thereon. After the case was transferred to the chancery court, the several parties entered into the following stipulation, viz:

"It was further stipulated and agreed by the respective parties in open court that, if the court should find against the said defendants and cross-plaintiffs on the issues made by their answers and cross-complaints, the said respective causes should then be referred to a master to take testimony as to the mesne profits due plaintiffs, if any, from said defendants respectively and as to the amounts due defendants respectively for improve-

ments made and taxes paid, if any, by them or either or any of them upon the property in controversy in said several cases."

Now, aside from this stipulation, we are of the opinion that, the chancery court having properly assumed jurisdiction for the purpose of considering the defense interposed by appellees, it should retain it for the purpose of completely adjudicating the rights of the parties concerning the subject-matter of the controversy. It is proper, therefore, for the controversy as to the amount of mesne profits, if any, to be recovered by appellant, and the amount of reimbursement, if any, to be recovered by appellees, should be determined in the chancery court. We do not mean to decide, however, at this time, whether or not appellees are entitled to any reimbursement, for that question has not been presented and was not decided below. We merely leave that matter open for further consideration in the court below.

Other matters are set up in the cross-complaints of some of the appellees, viz., the claim by some of them who purchased from the administrator of the estate of Mary A. Hare to subrogation against the property of that estate for the amount of purchase price paid, and also the claim of the Sisters of Mercy against Ella Hare for an accounting of the amounts paid out for her benefit. But these matters we do not think are germane to this controversy, and find no proper place in this litigation. If causes of action exist, they should be made the subject of separate suits.

The judgment of this court is therefore modified so as to change the directions; and the decree of the chancery court is reversed with directions to enter a decree in accordance with this opinion, and for further proceedings not inconsistent herewith. It is so ordered.