JENNINGS *v.* BOWMAN.

4-9761                                      249 S. W. 2d 111

Opinion delivered May 19, 1952.

Rehearing denied June 23, 1952.

*Beaumont & Beaumont, Josh W. McHughes* and *Gerland P. Patton,* for appellants.

*Townsend & Townsend,* for appellees.

GRIFFIN SMITH, Chief Justice. Appellants, as heirs of Orville Jennings, question the Chancellor's decree respecting the will of Dr. Roscoe Greene Jennings, of Little Rock. The will was probated April 25, 1899.

The controversy relates to Paragraph XI. Appellants contend that a trust was created and that title to Lots 4, 5 and 6, Block 115, City of Little Rock, is burdened with such trust. Because Paragraph IV of the will first mentions Block 115, the entire document must be considered. It is copied in the margin.[1]

---

[1]          WILL OF ROSCOE GREENE JENNINGS

The last will and testament of Roscoe Greene Jennings, City of Little Rock, County of Pulaski and State of Arkansas, considering the uncertainty of life and being of sound mind and memory, I, Roscoe Greene Jennings, do make and publish this my last will and testament hereby revoking all or any will heretofore made by me.

[I]    My will is that all my just debts and all my funeral expenses shall be first paid by my executrix hereinafter named out of my estate as soon after my decease as convenient.

[II]   My will is that my real estate including my homestead, shall be divided equally between my children, Octavia Jennings, Orville Jennings, Crews Elliott Jennings and Gertrude Elizabeth Jennings, my wife, share and share alike.

[III]   I will and bequeath to my daughter Octavia Jennings $1,000.00 in cash to be paid by my executrix as soon as can be out of any money belong to my estate, which will be in addition to her share of the real estate here granted and her share of the personal property hereinafter granted. I also bequeath to my said daughter, Octavia Jennings, all the furniture now used by her in her bedroom; my library of miscellaneous books, the piano in my house and the parlor furniture, carpets, curtains, draperies, pictures and my large punch bowl with the glasses matching and accompanying it and the book cases containing the said books.

[IV]   I hereby declare that Block Number One-Hundred Fifteen (115) in the City of Little Rock, where I now reside which was formerly deeded to my wife, was so conveyed as a temporary expedient and without any intention or desire to give or settle the property upon her, but that she should hold it in trust for me and my heirs until such time as I should desire it reconveyed to myself or my heirs. That this property was full paid for by myself and that my wife paid nothing for it, and that it is now as much a part of my estate as if the legal title was in myself, and I desire it to be so considered and divided between my legatees as provided by this will.

[V]   I also will that the mortgage debt on my homestead shall be paid by my executrix as soon as possible from any moneys that may come into her possession from any source belonging to my estate.

[VI]   I also bequeath to my son, Dr. Orville Jennings, my medical library and all the furniture and surgical instruments and the safe I now use in my office.

[VII]   Now it is also my will and desire that all my personal property including money, choses in action of every kind and description after the payment of my debts and after the payment to my daughter of the $1,000.00, herein willed to her, shall be equally divided between my said children, Octavia Jennings, Orville Jennings, Crews Elliott Jennings and my wife, Gertrude Elizabeth Jennings, share and share alike.

[VIII]   I also will and desire that after my death my body shall be taken to the City of St. Louis, Missouri, and there cremated and the ashes returned to my family to be preserved as they desire.

[IX]   That the cost of my cremation shall be paid by my executrix.

[X]   I hereby make, constitute and appoint my daughter Octavia Jennings sole executrix of this my last will and testament, I having full confidence in the honesty and fidelity of my said daughter, it is my request that she shall not be required to give bond as executrix of my estate.

[XI]   My son, Crews Elliott Jennings, not being capable of taking proper care of his property bequeathed to him by this will, I hereby will and bequeath his share of my estate including both real and personal property to my said daughter, Octavia Jennings, in trust for his use and benefit so long as he may live; after his death it shall be divided as provided, between the legatees of this will, and no bond shall be required of her as such trustee.

Signed and executed in the City of Little Rock, this 19th day of September, A.D. 1898, and declared this instrument to be my last will and testament.

ROSCOE GREENE JENNINGS

[Attestation]

The testator was survived by his wife and three children: Octavia, Crews, and Orville, all adults. Appellants are the widow and children of Orville. Appellees are the children of Octavia.

Record title to Block 115 was in Dr. Jennings' wife, Gertrude, when the testator died. In addition to this realty Dr. Jennings owned 1071.5 acres of rural realty and personal property worth about $2,000. Testimony disclosed that shortly after Dr. Jennings died the widow and children met and heard the will read. It is not shown that Gertrude voiced objections to any of the testamentary provisions.

On May 12, 1899,—shortly after the will was admitted to probate, but before an inventory had been filed—Gertrude executed warranty deeds to nine lots in Block 115. These conveyances were: To Orville, Lots 7, 8, and 9; to Octavia, Lots 10, 11, and 12; to Crews, Lots 4, 5, and 6. Concurrently each grantee quitclaimed to Gertrude Lots 1, 2, and 3. These deeds were recorded May 27, 1899.

As executrix Octavia filed an inventory May 24, 1899. The rural land was listed, but the city lots were not. Debts accounted for more than half of the country acreage. The remaining 401.5 acres were conveyed to Gertrude July 11, 1899. Quitclaim deeds executed by the three children state that the purpose was partition.

The executrix and the other children appear to have been at odds for several years. It was contended that the executrix had not fairly accounted for the personal property. However, the record shows that Orville—the chief objector—formally withdrew his exceptions to the account on November 18, 1905.

Crews died in California April 15, 1925. To secure personal loans he had executed four mortgages on Lots 4, 5, and 6. These were either made directly to Octavia or the obligations were assumed by her. There were several transactions between Octavia and Crews. These involved conveyances of partial interests; but ultimately Crews executed full conveyances to Octavia.

When Crews died his body was cremated. The ashes were sent to Octavia, who retained the urn in a closet as a silent reminder of former days.

Orville died Oct. 28, 1933, and the appellants claim through him. Octavia died in 1948; and, as heretofore stated, the appellees are her children.

*The Instant Suit—Questions Involved.*—The suit resulting in this appeal was filed against Octavia's administrator Nov. 23, 1949. The demand was for an accounting of rents and profits derived from the lots and for a decree vesting in the plaintiffs a half interest. The Chancellor concluded that the claims were without equity.

The basic question is, What title did Crews acquire through the deed from his mother, filed May 27, 1899? Appellants think that Crews was the beneficiary of a trust by the clear language of Paragraph XI of the will and that Octavia was charged with the duty of administering the trust property for Crews' benefit. A fiduciary relationship was violated, they say, when Octavia purchased the subject-matter. It is also asserted that she concealed the fact of Crews' death and that for this reason pleas of limitation are inapplicable.

Reliance is placed on the wording of Paragraph XI and its position in the will in relation to other provisions. Attention is directed to the fact that Orville objected to his sister's conduct in handling the estate; that he excepted to a settlement made by the executrix with the widow, and it is argued that the widow elected to take under the will rather than against it. For these reasons and from supporting collateral conduct it is believed by appellants that Octavia's status was that of a trustee, and that the interests now contended for should be decreed.

*Weight of the Evidence.*—A great deal of the testimony was from recollection necessarily affected by the erosion of time. Each contestant seeks to attach importance to isolated comments said to have been made half a century ago; and each interprets silence or an absence of affirmative action by interested parties in a manner favorable to the theory sought to be sustained.

Appellants' position depends upon one incident—the asserted failure of Gertrude to object to that portion of the will declaring that Block 115 had been conveyed to her as a temporary expedient. It is insisted that the execution of deeds affecting Block 115 was a means of carrying into effect provisions of the will, in contradistinction to a family settlement; but, they say, even if a family settlement had been consummated the active trust solemnly created by the will was not destroyed.

*Execution of the Deeds—Intentions of the Parties.*— When consideration is given to conduct of the parties and their actions during the interval more probably productive of assent or dissent, it seems apparent that the widow and the heirs did not execute the deeds in question for the purpose of adhering to the will; nor are we persuaded that Gertrude recognized the will and was compelled to make an election of inconsistent courses. The will, though probated, was ignored. The deeds apportioning Block 115 made no reference to the will; nor was the conveyance to Crews encumbered by reservations. Had a trust existed evidence of its breach would have been available when the deeds were recorded. This is true because each participant in the patrimonial bounty was familiar with the will and with provisions of the deeds. As a matter of law they would be charged with knowledge that deeds executed in derogation of their trust rights were written monuments regarding existing purposes.

After a lapse of five decades it is not safe to uproot these factual transactions in order to give effect to asserted intentions upon the one hand and possible reservations upon the other. What problems faced these parties, what motives swayed them, or what prompted their decisions—these are matters of enshrouded conjecture. In reviewing inter-party actions consummated so long ago, there is no assurance that we would not be doing a greater wrong in sustaining the trust theory than in leaving the claimants' predecessors where they placed themselves through actions indicative of thoughtful volition.

Clearly the record title to Block 115 was in Gertrude. She was not compelled, by the will's recitals alone, to

convey it or to observe any directions pertaining to a disposal of it. The fact that she divided the block among the children and accepted benefits in return is not conclusive of the proposition that the will was accorded validity. Existence of the will, the circumstance that it was probated, and failure to object—these things did not affect Gertrude's title. Were she at this time seeking some benefit inconsistent with division of the property a different situation might arise; but this is not a controversy directly concerning her. An election by the widow to observe or reject the will would be pertinent if some advantage flowing to her were being sought. Appellants claim through Crews, and his rights became fixed when the deeds dividing Block 115 were recorded.

Appellants cite a number of authorities emphasizing the rule that beneficiaries of an active testamentary trust cannot, by agreement, destroy the trust and acquire the corpus. This is generally true. But here the alleged trust property was not ostensibly held by the testator at the time of his death. Instead, it was the individual property of one of the devisees. This devisee was not divested of title by the declaration in the will, but her right to hold to the exclusion of the remaining devisees was questioned. There was no legal reason the area of possible controversy could not be resolved by agreement —that is, by division of the property. Such a division did not involve the destruction of a trust for the very sufficient reason that the trust did not attach to property not owned by the testator, hence the devisees and the widow were at liberty to settle any questions of disagreement unless prohibited by law or by something a court of equity would have the right to say was contrary to public policy.

Result is that the deed from Gertrude to Crews conveyed a fee simple title. Having acquired such title, Crews could deal with the property as he chose. Octavia acquired it from Crews free of trusteeship.

Affirmed.

GEORGE ROSE SMITH, J., dissenting. I wholly disagree with the majority's statement that "it seems apparent

that the widow and the heirs did not execute the deeds in question for the purpose of adhering to the will; nor are we persuaded that Gertrude recognized the will and was compelled to make an election of inconsistent courses. The will, though probated, was ignored." The suggestion that the parties can ignore a will which vests title to real property is an innovation I regard as unsound.

Gertrude Jennings had the affirmative duty of making an election either to take under the will or to renounce it and assert dower. It is familiar law that when the testator undertakes to devise property that belongs to a third person and at the same time leaves other property to that person, the latter must either accept the testamentary scheme or renounce it completely and keep his own property. *McDonald* v. *Shaw,* 92 Ark. 15, 121 S. W. 935, 28 L. R. A. N. S. 657. When Dr. Jennings purported to devise property that stood in his wife's name and also left other property to her, she had the choice of acquiescing in the will or of repudiating it altogether. As I read the record it is undisputed that she chose the former course— whether consciously or not makes no difference now that she is dead and cannot contend that her election was made in ignorance of her rights.

Mrs. Jennings certainly did not renounce the will and claim dower; that is a matter of record. She did accept title to the rural acreage, which was an affirmative recognition of the will. In addition, she did with Block 115 exactly what the will directed her to do. That is, within three weeks after the will was probated she divided the block in accordance with the testator's instructions. The majority say that the deeds made no reference to the will; no reference was necessary. The majority say that the conveyance to Crews was unencumbered by reservations and that evidence of a breach of trust was available when the deeds were recorded. These circumstances are not material to the basic problem. This was not a spendthrift trust; hence if the trustee wished to permit the beneficiary, Crews, to take the title in his own name the beneficiary alone could complain of the technical breach of trust. Rest., Trusts, § 200. And since Crews

accepted the conveyance he was precluded by his consent from making complaint. *Ibid.,* § 216.

Thus it seems too plain for argument that the widow did accept the will and that therefore the testamentary disposition of Block 115 is binding on all concerned. By that disposition these three lots were left in trust for Crews during his lifetime, with remainder to his brother and sister. It was not within the power of the parties to terminate the trust, for a material purpose of the settlor had not been accomplished. Rest., § 337. Illustration 13 of that section fits this case so precisely that no other authority is needed: "A [Dr. Jennings] bequeaths all his property to his three children, B [Orville], C [Octavia] and D [Crews] in equal shares. By the will it is provided that since D [Crews] has little financial ability his share shall be held in trust to pay him the income for life and on his death to pay the principal to E [here Orville and Octavia]. Although D [Crews] and E [Orville and Octavia] desire to terminate the trust, or D [Crews] transfers his interest to E [here Octavia], or E transfers his interest to D, the trust will not be terminated."

The only remaining question is that of limitations. Of course the statute did not run during the lifetime of Crews, as the remaindermen had no right of possession until his death. And after Crew's death Octavia's possession would not be adverse to her cotenant Orville until she brought notice home to him that she was claiming the land for herself, *Smith* v. *Kappler, ante,* p. 10, 245 S. W. 2d 809, and there is nothing to show that such notice was given. On the contrary, according to the testimony of a disinterested witness, Mrs. Tunnah, Octavia admitted many years after Crew's death that she owned only a half interest in the three lots now in controversy. Mrs. Tunnah and Octavia were friends; there is every reason to accept Mrs. Tunnah's testimony as the truth. It shows conclusively that Octavia, far from claiming the property as her own, recognized the controlling force of her father's will. It seems to me that the majority are needlessly depriving these appellants of their inheritance, and I therefore dissent.