Dana Mahaffey MASON and Mike
Mahaffey, Plaintiffs-Appellants,

v.

Judy PEARSON, W. Clary Lunsford,
Thaddeus S. Rodda, Jr., Donna Denise
Pearson and Robert Ashmore Pearson,
Defendants-Appellees.

Court of Appeals of Tennessee,
Western Section at Jackson.

Dec. 15, 1983.

Rehearing Denied Jan. 9, 1984.

Application for Permission to Appeal
Denied by Supreme Court
March 26, 1984.

Erich W. Merrill, Memphis, for plaintiffs-appellants.

Everett B. Gibson and Jack D. Kopald, Memphis, for Judy Pearson, W. Clary Lunsford, Donna Denise Pearson and Robert Ashmore Pearson.

Lloyd S. Adams, Jr. and Paul A. Brantley, Memphis, for Thaddeus S. Rodda, Jr.

NEARN, Presiding Judge, Western Section.

Plaintiffs filed suit to set aside a settlement agreement. On summary judgment motions the Chancellor dismissed the complaint as to certain defendants, which dismissal was made final pursuant to Rule 54.02 T.R.Civ.P. The plaintiffs appeal.

Mary Maude Ashmore, a resident of Shelby County, Tennessee, died testate on September 5, 1979, and her last will and testament was probated in Shelby County. At the time of her death she owned interests in lands in the state of Arkansas. In her will she devised 200 acres of Arkansas land called the Burchfield Farm as well as other Arkansas lands to the plaintiffs, Mrs. Dana Mahaffey Mason and Mike Mahaffey. Other lands were devised to defendant Judy Ashmore Pearson, the aunt of Dana Mahaffey Mason. Subsequently, it was learned that the testatrix owned only a life estate in the Burchfield Farm, having acquired same under the will of her deceased husband; which will further provided that upon the death of the wife, a life estate in said property would exist in his two daughters Judy Ashmore Pearson and Mary Louise Ashmore Mahaffey with the fee vesting upon the death of each, one-half in their "children and heirs-at-law." Mary Louise Ashmore Mahaffey predeceased the testatrix and plaintiffs Dana Mahaffey Mason and Mike Mahaffey are her issue.

A dispute arose between plaintiffs and defendant Judy Ashmore Pearson over the proper construction and interpretation of the Mary Maude Ashmore will in light of the foregoing circumstances, as well as a dispute over the testamentary capacity of Mary Maude Ashmore at the time of the execution of her will. Plaintiffs engaged counsel, negotiations were had and a formal written settlement agreement was reached whereby all matters pertaining to the estate were resolved. The agreement was executed on July 3, 1980, and that is the agreement which the complaint now seeks to set aside.

The attack on the settlement agreement is essentially two pronged. It is insisted that the defendant Judy Pearson, as a beneficiary and as Executrix, induced the plaintiffs to enter into the settlement agreement by overt misrepresentations and non-disclosures. It is also insisted that the settlement agreement was entered into because of a mutual mistake of fact.

Numerous depositions, affidavits and documents were filed in support of motions made by both parties for summary judgment. The Trial Judge granted defendants' motion and denied plaintiffs' motion. Since both filed motions for summary judgment it would seem that all agree that there are no disputed issues of fact and that a summary judgment is proper. The disagreement is over whether plaintiffs or defendants-appellees were entitled to summary judgment.

A proper understanding of our treatment of the matter requires that we set forth some of the facts.

The will of Mary M. Ashmore named Judy Pearson and Erich M. Merrill, an attorney of the Memphis Bar, as co-executors.

After the death of Mrs. Ashmore, Donald Pearson, the husband of Judy, wrote a letter to Erich Merrill. Donald was autho-

rized by Judy to write the letter. Since a great deal of importance is attached to the letter, we here copy it in its entirety:

5753 Barfield Circle

Memphis, Tennessee 38117

November 7, 1979

Mr. Erich W. Merrill

2700 Sterick Building

Memphis, Tennessee 38103

Dear Mr. Merrill:

After several telephone conversations it was indeed nice to have met you at your office last Tuesday. It was equally nice meeting Mr. Lloyd, your fellow lawyer, who maintains an office in your suite. I was most impressed.

Repetitive of a long distance telephone conversation between you and me October 25th I stated that you tendered a fee which we considered equitable to handle the estate of Mrs. Mary M. Ashmore, certainly your competence is far above reproach. We are, however acquainted with a lawyer with whom family ties go back three generations. He and his firm spend approximately two thirds of their time in estate taxes and naturally we would feel more comfortable with them. As spouse and spokesman for Judy A. Ashmore Pearson, Co-Executor and principal heir to the estate of Mrs. Mary M. Ashmore, during that October 25th phone conversation we asked that you function only as co-executor. This statement prompted our meeting at your office last Tuesday.

After careful consideration, we now respectfully ask that you resign as Co-executor, thus making Judy sole Executrix, fees for which she will waive, therefore relieving somewhat the burden of expenses on the estate.

Be further advised that we are engaging the firm of Laughlin, Halle, Regan and Gibson to represent Mrs. Ashmore's estate.

Should there be any reasonable expenses that you have incurred since Mrs. Ashmore's death, naturally they would be satisfied through the estate.

With high regards and best wishes, I am

Sincerely,

Donale E. Pearson

DEP:dbh

cc: Laughlin, Halle, Regan & Gibson

Merrill did then sign a petition filed in the Probate Court of Shelby County, prepared by the defendant, W. Clary Lunsford, also an attorney of the Memphis bar, in which petition Merrill indicated his declination to serve and requested that Mrs. Pearson be appointed sole executrix. The petition was granted.

It was after the resignation of Merrill that Lunsford, as attorney for the estate, learned that Mrs. Ashmore owned only a life estate in the Burchfield Farm. This discovery caused the dispute to arise between plaintiffs and defendants-appellees over the devolution of the Burchfield Farm, as well as the mental capacity of the testatrix. The plaintiffs engaged the services of the law firm of Bogatin, Lawson and Chiapella to represent their position. Thad S. Rodda, Jr., also a member of the Memphis Bar and of the firm of Bogatin, Lawson and Chiapella, wrote Lunsford the following letter of position:

March 10, 1980

W. Clary Lunsford, Esq.

Laughlin, Halle, Regan, Clark & Gibson

2201 First Tennessee Bank Building

Memphis, Tennessee 38103

Re: Estate of Mary M. Ashmore

Dear Clary:

For your records, this letter will confirm the basic beliefs of my clients in reference to Mrs. Ashmore's Estate and their interest therein. Their beliefs are as follows:

*First.* A review of the respective Wills of Mr. and Mrs. Ashmore clearly evidence the testamentary intent of the Ashmores to distribute their respective estates to their daughters and their daughters' heirs per stirpes;

*Second.* The apparent defective conveyance of Burchfield property resulted from the mistaken belief of Mrs. Ashmore that said property had been passed

to her by operation of law upon the death of Mr. Ashmore;

*Third.* It is evident that had Mrs. Ashmore been aware of the status of the title to the Burchfield property, modifications to her testamentary bequests would have been made in order to maintain the equality between the two sides of the family;

*Fourth.* Based upon the above points, a strong case for reconstruction of Mrs. Ashmore's Will can be presented; however, litigation would be a costly strain upon both families and upon the Estate. In order to avoid such strains, it is the hope of my clients that Mrs. Pearson and yourself as representatives of the Estate would consent to the setting of a mutually convenient time for the parties to sit down and attempt to resolve this matter upon mutually acceptable terms.

Finally, I would request that you advise the Estate's Arkansas counsel that copies of all ancillary proceedings must be forwarded to my clients for review, as to all matters wherein their interests are affected, with an adequate allowance for a response to be presented before any action is taken by the Court.

Yours very truly,

Thad S. Rodda, Jr.

TSRJr:pr

cc: Mr. Mike Mahaffey

Mr. and Mrs. Clyde Mason

Thereafter, correspondence, discussions and conferences were had between parties and their counsel and between counsel. The settlement agreement was reached and executed on July 3, 1980. The agreement is unambiguous and is facially binding on all parties. We see no need to set it forth in its entirety. However, the agreement did contain the following statement:

3. That JUDY A. PEARSON will not petition for the award of any Executrix's fees out of the estate from either the Shelby County, Tennessee, or the Mississippi County, Arkansas, probate courts.

It is an argument of plaintiffs that in 1979, in consideration of Merrill's declination to serve as co-executor, Judy Pearson agreed to waive any executrix fee, which,

as shown by the Settlement Agreement, was a part of the consideration that induced plaintiffs to enter into that agreement. Further, that the affirmative duty was upon Mrs. Pearson and her attorney Lunsford to advise plaintiffs or their counsel at the time of the settlement that Mrs. Pearson had previously waived her right to a fee and that such failure constituted deception, which deception, because of the relationship of the parties, will vitiate the settlement agreement.

Later on, the plaintiffs engaged the services of Mr. Merrill to bring the instant action.

■ The efficacy of appellants' argument regarding the failure to disclose the letter of November 7, 1979, during settlement negotiations, is necessarily based upon that letter constituting a binding agreement on the part of Mrs. Pearson not to seek an executrix fee. If she were not thereby already bound to the estate not to seek a fee, she could waive that right in the settlement agreement. We hold that the letter of November 7, 1979, does not constitute a contract to waive an executrix fee.

■ We have reached this conclusion on several grounds. First, the letter does not state that in consideration of Merrill's resignation a fee will be waived. The general tenor of the letter is that the Pearsons desired to have the old family law firm represent the estate and not Mr. Merrill. When that was done, there would be no need for a lawyer co-executor and one executor would suffice. Therefore, the Pearsons "respectfully ask that you resign as co-executor." We conceive the language following that request, *viz.* that making Judy sole executrix, "fees for which she will waive," is nothing more than an expression of intention or general willingness to do something and not a statement of a *quid pro quo.* When such is the case the expression does not form an offer to be accepted by the other party. See *Talley v. Curtis,* (1939 M.S.) 23 Tenn.App. 181, 129 S.W.2d 1099, *cert. denied.*

■ In addition, if we are in error regarding our interpretation of the wording, the wording is, at best, ambiguous. When such is the case, one looks to the intent of the parties. Both Pearsons have filed affidavits and depositions wherein they clearly state that the matter of an executrix fee was never intended to be an offer of consideration for the resignation of Merrill. The other party to this so called offer and acceptance, Merrill, has filed no counter affidavits or countervailing testimony. When one is faced with a motion for summary judgment based upon affidavits, that party may not rest upon his pleadings to defeat the motion. See T.R. Civ.P. 56.05 and *Wachovia Bank and Trust Co. v. Glass,* (1978 Tenn.App. M.S.) 575 S.W.2d 950, *cert. denied.* Further, we do not see how such "offer", if it could be considered as such, would be any inducement to Merrill. He was no beneficiary under the will.

■ Having held that the letter of November 7, 1979, was not an agreement by the Executrix to waive fees, all other arguments of appellant regarding an alleged duty to disclose the letter are rendered moot.

We now consider the matter of the alleged "mutual mistake of fact."

It is the insistence of counsel for appellant that under the theory of the "doctrine of election" as prevails in Arkansas, see *Pittman v. Pittman,* (1964) 237 Ark. 684, 375 S.W.2d 361, Mrs. Pearson was faced with an election, i.e., she could elect to take under her father's will or under her mother's will, but not both. Since the mother owned only a life estate and in effect attempted to devise to Mrs. Pearson an interest she already possessed, it would be inconsistent for Mrs. Pearson to accept and reject under the same instrument, that is, accept other benefits of the will and reject the devise of Burchfield as made by the testatrix claiming a superior right. Accordingly, the devisee could not take under the mother's will unless the prior interest was renounced by an election not to take under the father's will. See *McDonald v.* *Shaw,* (1909) 92 Ark. 15, 121 S.W. 935. Further, that the Arkansas law of election applies to this case because the disputed land lies in Arkansas. However, it is also insisted that all parties and their respective counsel were unaware or mistaken about the Arkansas law.

It is also argued that while a mistake of the law of the residency of the parties is just that, a mistake of law, a mistake of foreign law constitutes, in the law, a mistake of fact—not law. This is so because all are not presumed to know foreign law. See *Walker v. Walker,* (1917) 138 Tenn. 679, 200 S.W. 825. Generally, a mutual mistake of law does not constitute grounds for the setting aside of an agreement; but generally a mistake of fact may constitute such grounds. *Gibson's Suits in Chancery* § 392 at 377–78 (W. Inman, 6th ed. 1982), *Trigg v. Read,* (1845) 24 Tenn. (5 Hum.) 529 at 545.

■ In considering the alleged "mutual mistake of fact" issue, it must be remembered that we are not dealing with just any contract or agreement, but are dealing with a family settlement agreement. Such agreements enjoy particular favor in their binding nature as a matter of public policy. At least as far back as 1845 it has been held that such agreements "are upheld with a strong hand". *Trigg v. Read, supra.* In 1866 it was stated "Such settlements, when made without fraud, are favored by the law, and should be encouraged and upheld by the Courts, when it can be done without a clear violation of some established rule of law." *Williams v. Sneed,* (1866) 43 Tenn. (3 Cold.) 533, 541.

Our examination of the Tennessee cases cited in the briefs and those found by the Court by independent research dealing with attempts to set aside family property settlement agreements seem to have given little consideration to whether the alleged mistake was one of fact or law. See *Reynolds v. Brandon,* (1871) 50 Tenn. (3 Heisk.) 593; *Boyd v. Robinson,* (1893) 93 Tenn. 1, 23 S.W. 72; *Williams v. Sneed, supra.*

In *Trigg v. Read, supra,* an exhaustive discussion is found regarding the setting aside of ordinary agreements based upon mistakes of law or fact. The difficulty, and sometime down right impossibility, of determining whether the mistake is one of law or fact or a mixed question, is lucidly set forth. Even when dealing with ordinary agreements that are not necessarily favored in their enforcement it is stated at pages 543 and 544: "If, therefore, a compromise of a doubtful right is fairly made between the parties, its validity cannot depend upon any future adjudication of that right. And, where compromises of this sort are fairly entered into, whether the uncertainty rests upon a doubt of fact, or a doubt in point of law, if both parties are in the same ignorance, the compromise is equally binding, and cannot be affected by any subsequent investigation and result." This is so because the very issue compromised and settled cannot be considered the basis of mistake to set aside the agreement. Where the issue compromised is based upon a mutually mistaken assumption of an ancillary material fact, such mistake might be the basis of relief. However, in the instant case all were aware of the contents of the will of R.S. Ashmore and of the contents of the will of Mary Maude Ashmore. It was the very combined effect of these instruments that was the issue in dispute. That was compromised and settled along with the issue of the mental capacity of Mary Maude Ashmore. Under rules applicable to ordinary agreements we see no grounds to set the agreement aside.

However, even if our conclusion on that point is in error, it will make no difference because we are dealing with a family settlement agreement. As previously pointed out the reported cases of this State dealing with attempts to set aside such agreements are little if any concerned with the exact nature of the claimed mistake. The rule applied in such cases is well settled and may be found quoted in *Williams v. Jones,* (1963 W.S.) 54 Tenn.App. 189, 388 S.W.2d 665 at 672, *cert. denied:*

Family settlements are favored in the law. "In cases relating to the adjustment of family disputes where the motive is to preserve the honor or peace of the family or the family property, the courts will not closely scrutinize the consideration or look into the merits of the dispute where all is fair and aboveboard. The courts will decree performance of all reasonable settlements if possible, even though they may, at times, rest on grounds which would not have been satisfactory if the transaction had occurred between mere strangers, subject, however, to a proper regard for the principles that govern the courts in the specific enforcement of compromise agreements where this form of remedy is sought." (citations omitted).

Therefore, as to alleged mistakes of law or fact, we have concluded that the rule in this State regarding family property settlements is and has been the same rule articulated by the Supreme Court of Iowa in the case of *Bakke v. Bakke,* (1951) 242 Iowa 612, 47 N.W.2d 813, *viz.:*

It is a well established rule that voluntary settlement of doubts and disputes between parties are to be encouraged and especially family controversies, and will not be disturbed for any ordinary mistake, *either of law or of fact,* since their very object is to settle disputes without judicial controversy. In the absence of fraud, misrepresentations, concealments, or other misleading incidents, a voluntary compromise must stand. (emphasis ours)

We would add to that rule—unless the results are unconscionable.

We now look to the record to determine whether there was fraud involved in the procurement of the agreement. The argument that the failure to disclose the November 7, 1979, letter constituted some sort of fraud has been treated at the outset of this opinion and found wanting. There remains the argument that seems to be propounded by counsel for appellant, that since Mrs. Pearson was the executrix of the estate, she and Lunsford, the attorney

for the estate, were in a fiduciary relationship with the beneficiaries and as such were under a duty to advise plaintiffs of the "doctrine of election." In short, the failure of Mrs. Pearson and Lunsford to advise plaintiffs of the "correct" law constituted either an actual fraud or misrepresentation. This argument seems to us, and we believe it is, repugnant to the "mutual mistake argument." If Judy and Lunsford knew the "correct" law to be applied and misled the plaintiffs by failing to divulge same, there hardly seems to be any room for a *mutual* mistake. Be that as it may, we will consider the argument. There is no doubt that an Executor operates in a fiduciary capacity. See *Pritchard on Wills and Estates*, 4th ed., § 669 at 221. Mrs. Pearson wore two hats. She was a beneficiary as well as a fiduciary. In both capacities she entered into the settlement agreement. Now, let us examine the circumstances of the settlement agreement. Shortly after Mrs. Pearson was appointed executrix a patent dispute arose between plaintiffs and Mrs. Pearson as executrix and beneficiary of the will, over the validity and effect of Mrs. Ashmore's will. The plaintiffs were so upset over the matter that they engaged their own counsel to represent them in their dispute with her and the attorney for the estate. In *Williams v. Jones, supra,* a case in which a settlement agreement was set aside, this Court quoted with approval from Am.Jur. "Rules governing Fiduciaries" as follows:

> ... but where a compromise is entered into with a trustee, not upon any reliance or confidence placed in him, but upon the advice of an independent, professional, disinterested, and competent advisor, the transaction is not voidable at the election of the beneficiary and it devolves upon him to show actual or constructive fraud.

In any case where a breach of a fiduciary relationship is found, it is found on the basis that the aggrieved party relied upon and trusted the advice of the fiduciary to the detriment of the aggrieved party. In this case the exact opposite is true. The plaintiffs absolutely refused to accept Mrs. Pearson's and Lunsford's interpretation of the matter and engaged their own counsel to espouse their interpretation. We hold there was no breach of any fiduciary relationship that might have existed between Mrs. Pearson and Lunsford and the plaintiffs in these negotiations. There can be no fraud or misrepresentation under the admitted facts of this case.

As to unconscionable results, we have examined the agreement and find nothing unconscionable in its results. Simply because plaintiffs did not receive thereunder, that full amount they now perceive themselves entitled to under another theory of law does not render the agreement unconscionable. In most family settlements no one receives everything they believe they are entitled to. Such agreements are usually compromise agreements and that is what this one was.

We find no error in the judgment below; affirm same with costs of appeal adjudged against appellants.

TOMLIN and HIGHERS, JJ., concur.