IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 13, 2019 Session

## PENKLOR PROPERTIES LLC v. JO ELLEN BUEHLER ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-15-0568     Jim Kyle, Chancellor**

———————————————————————

**No. W2018-00630-COA-R3-CV**

———————————————————————

Appellant Mid South Title Services, LLC agreed to act as escrow agent for a real estate transaction in which Appellee Penklor Properties, LLC was the buyer. Appellee tendered earnest money, which, under the Purchase and Sale Agreement, was to be held by Appellant unless and until the parties to the Purchase and Sale Agreement submitted a signed written agreement changing the terms of the escrow. Very shortly after the Purchase and Sale Agreement was signed, Appellant received a purported amendment from the seller's former attorney and real estate broker. The amendment requested that Appellant release $53,000.00 of the escrowed funds in satisfaction of the attorney/broker's "former legal fees." Without inquiring further, Appellant issued the requested check. Appellant later discovered that the amendment was not, in fact, authorized by the parties to the Purchase and Sale Agreement. Appellee filed suit against Appellant for breach of contract and breach of fiduciary duty, and the trial court entered judgment against Appellant. Appellant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Richard J. Myers, Memphis, Tennessee, for the appellant, Mid South Title Services, LLC.

John D. Horne, Memphis, Tennessee, for the appellee, Penklor Properties, LLC.

**OPINION**

# I. Background

Appellee Penklor Properties, LLC ("Penklor") is a real estate development and investment firm located in Cincinnati, Ohio. Scott Davis is Penklor's president. Jo Ellen Buehler is the widow of Harold Buehler. The Buehlers developed a large portfolio of low-income, single-family residences in Shelby County through the use of tax incentives. United Development Co. 2001, LP ("UDC") is a limited partnership, of which Mrs. Buehler is the General Partner. Javier Michael Bailey was the Buehlers' attorney prior to his disbarment on April 26, 2012. After his disbarment, Mr. Bailey served as a licensed real estate broker for the Buehlers. Appellant Mid South Title Services, LLC ("Mid South") is a real estate closing and title insurance company located in Memphis. M. Taylor Hewgley serves as Mid South's COO.

On November 20, 2012, Penklor submitted a written offer to Mrs. Buehler, individually and on behalf of the various UDC limited partnerships, to purchase approximately 1,053 parcels of residential property for $22,500,000.00. The parties subsequently agreed to a sale price of $24,900,000.00. On November 26, 2012, the parties signed the counter-offer. The Purchase and Sale Agreement ("Agreement") provided that Penklor, the Buyer, would make an earnest money deposit of 1% of the purchase price. Under the Agreement, the sale was contingent on Penklor's satisfactory inspection of the properties. The Agreement designated Vanecia Kimbrough as the closing agent for the seller, and she engaged Mid South to serve as escrow agent. There was no written agreement concerning Mid South's involvement; however, it is uncontested that Mid South agreed to serve as escrow agent.

On December 3, 2012, Penklor transferred $249,000.00 in earnest money to Mid South's escrow account at SunTrust Bank. On December 4, 2012, Mr. Bailey sent Ms. Kimbrow an email stating that he was preparing "an addendum to the escrow agreement that addresses the distribution of $5[3],000 immediately."

On December 6, 2012, Mr. Bailey sent another email to Ms. Kimbrough with a "Requested Amendment to the Contract" (the "Amendment"). The Amendment contains signatures purporting to be those of Mrs. Buehler and Mr. Davis. Both signatures are dated December 6, 2012, with Mr. Davis's alleged signature being made at 11:00 a.m. and Mrs. Buehler's at 1:00 p.m. The Amendment states:

> The $249,000 deposited with Mid South title shall be distributed and handled as follows: 1) $149,000.00 shall be used to pay all costs relating to title and legal fees associated with the preparation and transfer of property interest. 2) $53,000 shall be immediately transferred to Javier Bailey to payoff outstanding fees and encumbrances and outstanding invoice for former legal fees, 3) $47,000 shall be used for earnest money.

On or about December 7, 2012, Mr. Bailey contacted Mid South requesting a $53,000.00 check. Without contacting Penklor, Mr. Hewgley authorized the distribution of the funds to Mr. Bailey and issued a check on Mid South's escrow account. On receipt, Mr. Bailey immediately presented the check at SunTrust for cashing. SunTrust's teller contacted Mid South, while Mr. Bailey waited, and Mr. Hewgley confirmed that the check could be cashed. The bank cut Mr. Bailey a cashier's check for $46,000.00 and gave him the remaining $7,000.00 in cash.

Following its inspections, on February 12, 2013, Penklor concluded that it would not go forward with the purchase of the properties. Penklor exercised its contingency to void the Agreement and requested return of its $249,000.00 earnest money deposit. Thereafter, Mr. Hewgley contacted Penklor stating that Mid South could only refund $196,000.00 as it had distributed $53,000.00 to Mr. Bailey. Penklor denied signing the Amendment or otherwise authorizing release of escrowed funds.

On April 27, 2015, Penklor filed suit for breach of contract, breach of fiduciary duty, ordinary and gross negligence, and conversion naming Mid South, Mrs. Buehler, UDC, and Mr. Bailey as defendants. Concerning the Amendment, the complaint alleges that it

> contained an unauthorized and/or forged signature purporting to be the signature of the authorized representative of [Penklor]. In fact, no such agreement had been authorized by [Penklor], and no such document was executed by [Penklor], all of which facts were known, or should have been known, by the Defendants.

On July 25, 2015, Mrs. Buehler and UDC filed an answer to the complaint, wherein Mrs. Buehler averred that "the signature found at line 33 of the Amendment is not hers." On August 7, 2015, Mid South filed it answer, wherein it asserted, as an affirmative defense, that "[b]y delivering the earnest money of $249,000.00 to [Mid South] pursuant to the Real Estate Agreement [i.e., the Purchase and Sale Agreement executed by and between Mrs. Buehler and Penklor], [Mid South] became the Holder as defined in the Real Estate Agreement." Mid South continued that "[l]ines 150 and 152 of the Real Estate Agreement state 'No party shall seek damages from Holder (nor shall Holder be liable for the same) for any matters arising out of or related to the performance of Holder's duties under this earnest money paragraph.'" As the purported "Holder" under the Agreement, Mid South maintained that it could not be sued. Concurrent with its answer, Mid South filed a counter-complaint for breach of contract against Penklor, wherein it argued that Penklor had breached the Agreement by filing suit against Mid South in contravention of the foregoing exculpatory provisions. Mid South sought its attorney's fees and costs associated with defending Penklor's lawsuit.

On August 10, 2015, Penklor filed an answer to Mid South's counter-complaint, wherein it stated that "no document was executed by [Penklor] and [Mid South]

establishing an escrow agent relationship, nor agreeing that [Mid South] was a beneficiary of the Purchase and Sale Agreement . . . ." After Penklor moved for default judgment (for failure to answer) against Mr. Bailey, he filed an answer on August 27, 2015, wherein he denied any liability.

On May 20, 2016, Mid South filed a motion for summary judgment as to all claims. On September 16, 2016, the trial court granted partial summary judgment dismissing Penklor's claims against Mid South sounding in conversion, misappropriation, gross negligence and/or breach of express contract. The trial court denied Mid South's motion for summary judgment as to Penklor's claims for negligence and breach of fiduciary duty, and these claims were heard in a two-day bench trial. On January 26, 2018, the trial court entered its findings of fact and conclusions of law. These findings were reduced to final judgment on February 5, 2018.

On February 26, 2018, Mid South filed a motion to alter or amend the judgment pursuant to Tennessee Rules of Civil Procedure 52.02 and 59.01. The trial court denied the motion by order of March 14, 2018. The trial court granted Penklor's motion for discretionary costs by order of March 23, 2018. After appeal, this Court determined that the order appealed was not final (for lack of ruling on attorney's fees) and entered a show cause order on July 17, 2018. On August 13, 2018, Appellant filed a revised final judgment in this court.

## II. Issues

We perceive that there is one dispositive issue: Whether, by releasing escrowed funds to Mr. Bailey, Mid South breached its fiduciary duty as Penklor's escrow agent.

## II. Standard of Review

Because this case was tried by the court sitting without a jury, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates against those findings. *McGarity v. Jerrolds*, 429 S.W.3d 562, 566 (Tenn. Ct. App. 2013); *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, the weight of the evidence must "demonstrate . . . that a finding of fact other than the one found by the trial court is more probably true." *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court conducts a *de novo* review of the trial court's resolution of questions of law with no presumption of correctness. *Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

## III. Analysis

Here, the Agreement provides, in relevant part, as follows:

> 3.  Earnest Money.  Buyer has paid or will pay within 5 days after the Binding Agreement Date to Javier Michael Bailey or First National Realty, Inc. (name of Holder) ("Holder") . . . an Earnest Money deposit of 1% by . . . Bank Wire to Account Provided ("Earnest Money"). . . .  Holder shall disburse Earnest Money only as follows:
>
> (a) at closing to be applied as a credit toward Buyer's Purchase price;
> (b) upon a written agreement signed by all parties having an interest in the funds;
>
> ***
>
> (d) upon a reasonable interpretation of the Agreement;
>
> ***
>
> . . . No party shall seek damages from Holder (nor shall Holder be liable for the same) for any matter arising out of or related to the performance of Holder's duties under this Earnest Money paragraph. . .

In the first instance, Mid South argues that it is entitled to protection under the exculpatory language of the contract, i.e., "No party shall seek damages from Holder (nor shall Holder be liable for same) for any matter arising out of or related to the performance of Holder's duties . . . ."  Concerning this argument, the trial court held that "[b]ecause [Mid South] had not been designated as "Escrow Agent" or "Holder" of the Earnest Money Deposit in the Purchase and Sale Agreement, [Mid South] was not a party to the Contract and was not entitled to claim any benefit set forth in the Contract."  We agree. Mid South is not named in the Agreement between Mrs. Buehler and Penklor.  It is, therefore, not entitled to the protections afforded under the contract.

Although Mid South is not entitled to rely on the exculpatory language in the parties' Agreement, by accepting the role of escrow agent, it is bound by the Agreement between the parties as to how they want the escrowed funds administered.  As the Sixth Circuit Court of Appeals has noted:

> **[T]he particular tasks with which the escrow holder is charged are those set forth in the escrow agreement**. *See generally* 30A C.J.S. *Escrows* § 10(a).  An escrow agreement "is in essence a contractual undertaking to assure the carrying out of obligations already contracted for." *Id*. § 2.

***West Knoxville Associates Ltd. Partnership v. Ticor Title Ins. Co.***, 124 F.3d 201, 1997 WL 561420, at \*5 n. 8 (6th Cir. 1997) (emphasis added). In addition to its duty to comply with the explicit directions given by the parties to the escrow agreement, an escrow agent also occupies a fiduciary relationship with both the parties to the escrow agreement. ***Id.*** ("An escrow holder occupies a fiduciary relationship with both the parties to the escrow agreement, and has attendant duties of loyalty, disclosure, and care."); *see also* ***Ogle v. Realty World-Barnes Real Estate Co.***, No. 03A01-9610-CH-00336, 1997 WL 207993 (Tenn. Ct. App. April 28, 1997) (holding that an escrow agent breached her fiduciary duties to plaintiffs by encroaching on the escrow account). Indeed, "[c]ommon law fiduciary duties of an escrow or closing agent include (i) complying with the instructions of the principals; and (ii) exercising ordinary skill and diligence in the agent's employment." **2 Title Ins. Law** § 20:30, Westlaw (August 2018). Accordingly, "upon accepting a purchase contract for escrow or closing, . . . a title company assumes a duty to follow all **explicit and implied** instructions for escrow and closing, and to perform all services undertaken with the skill and diligence reasonably expected of a real estate professional." *Id*. (emphasis added). In Tennessee, one who stands in a fiduciary relationship with another has a duty to exercise the "utmost good faith." ***Estate of Doyle v. Hunt***, 60 S.W.3d 838, 845 (Tenn. Ct. App. 2001) (citing ***Mason v. Pearson***, 668 S.W.2d 656, 663 (Tenn. Ct. App. 1984); ***Baker v. Baker***, 142 S.W.2d 737, 750 (Tenn. Ct. App. 1940)). Although there are no bright-line rules for what constitutes "utmost good faith," Tennessee courts have observed that a fiduciary is "required to exercise the same degree of diligence and caution that a reasonably prudent businessman would employ in the management of his own affairs." *Id*. (citing ***In re Estate of Inman***, 588 S.W.2d 763, 767 (Tenn. Ct. App.1979)). An agent who breaches his or her fiduciary duties to his or her principals is liable for any pecuniary loss caused by the breach. *See* ***Youngblood v. Wall***, 815 S.W.2d 512 (Tenn. Ct. App.1991).

By accepting the role as escrow agent for the transaction between Mrs. Buehler and Penklor, Mid South assumed a duty not only to comply with the parties' explicit instructions as outlined in the Earnest Money portion of their Agreement, but also to exercise the "utmost good faith" in carrying out the parties' wishes concerning the escrowed funds. Mid South argues that it did, in fact, comply with the explicit instructions outlined in the Agreement. Specifically, Mid South contends that the Amendment requesting the release of the $53,000.00 to Mr. Bailey was "a written agreement signed by all parties having an interest in the funds." Upon satisfaction of the explicit instruction set out in the parties' Agreement, Mid South maintains that it was required to release the funds. While it is true that an escrow agent is subject to liability for failing to follow the joint instructions provided by the parties to the escrow, as discussed above, the duty of an escrow agent does not end with rote compliance with the parties' agreement. Rather, the escrow agent must also exercise the utmost good faith as a fiduciary to the parties.

Implicit in the Agreement between Mrs. Buehler and Penklor is the fact that the

escrowed funds are to be used in furtherance of the transaction between Mrs. Buehler and

Penklor concerning Penklor's purchase of properties from Mrs. Buehler. This is the

essence, or the *res*, of the contract.

> As set out in full context above, the Amendment provides
>
> The $249,000 deposited with Mid South title shall be distributed and handled as follows: 1) $149,000.00 shall be used to pay all costs relating to title and **legal fees associated with the preparation and transfer of property interest**. 2) $53,000 shall be immediately transferred to Javier Bailey to payoff **outstanding fees and encumbrances and outstanding invoice for <u>former</u> legal fees**. . .

(Emphases added). Mrs. Buehler and Penklor finalized their Agreement on November 26, 2012. It is undisputed that Mr. Bailey was disbarred by the Tennessee Supreme Court effective April 26, 2012. The parties knew of the disbarment because the reason for Mid South's involvement and agreement to serve as escrow agent was Penklor's insistance that the escrow agent be an attorney. As such, Mr. Bailey, who was initially named in the Agreement, could not fulfill this role. As denoted in the Amendment, the disputed $53,000.00 in escrowed funds were to be paid to Mr. Bailey for "outstanding fees" and in satisfaction of an "outstanding invoice for former legal fees." It is axiomatic that Mr. Bailey's "former legal fees" could not be associated with this transaction because he was disbarred some seven months prior to Penklor and Mrs. Buehler's Agreement. As such, the request for distribution of $53,000.00 in escrowed funds was clearly outside the scope of the Agreement.

While we concede that the parties were free to change the nature and use of the escrowed funds, the Amendment provided to Mid South by Mr. Bailey is more than suspect. First, as noted above, following his disbarment (in April 2012), Mr. Bailey could not have accrued legal fees for work done on this transaction (which was entered in November 2012). This, in itself, should have alerted Mid South to seek verification from the parties concerning their wishes for the escrowed funds. Furthermore, the Amendment specifically contemplates payment of the legal fees associated with this transaction in the earmarking of $149,000.00 in escrowed funds for this purpose. In view of the fact that the Amendment designates $149,000.00 for "legal fees associated with the preparation and transfer of property interest" for this transaction, a reasonably prudent business person would question the nature and origin of the "outstanding fees and encumbrances and outstanding invoice for former legal fees" payable directly to Mr. Bailey, who was not a licensed attorney at any time during this transaction.

Not only was the reason for the $53,000.00 disbursement suspect, but the timing of the Amendment was also dubious. The parties Agreement was entered on November

26, 2012, and Penklor wired the $249,000.00 to Mid South's bank on December 3, 2012. The purported Amendment was allegedly signed by Mrs. Buehler and Mr. Davis on December 6, 2012. Mid South issued the check for $53,000.00 on December 7, 2012 and tendered it directly to Mr. Bailey on the same day. The truncated timeline is even more suspicious given the fact that Mr. Hewgley spoke with Penklor's attorney only one day before Mr. Hewgley authorized the $53,000.00 check. It is undisputed that Penklor's attorney did not mention any forthcoming amendment to the parties' Agreement.

Furthermore, the Agreement was contingent on Penklor's approval of the condition of all of the 1,053 properties after exercising its right of inspections. The inspection of this number of properties could not have been accomplished by the time of the purported Amendment. Without Penklor's approval of the condition of the properties, there was no reason to believe that Penklor would authorize any disbursement of its earnest money.

Based on the totality of the circumstances, the trial court held that

> [g]iven the number of warning signals in existence at the time Mr. Bailey asked [Mid South] to disburse $53,000.00 of Penklor's earnest money deposit, a prudent escrow agent would have been expected to act for Penklor as an Escrow Agent would have acted in the management of his own affairs . . . [Mid South] should have . . . [made] inquiry of Penklor [whether] that disbursement had in fact been authorized, before making [the] disbursement.

We agree with the trial court's conclusion. As a fiduciary to both Mrs. Buehler and Penklor, Mid South had a duty to exercise the "utmost good faith" in carrying out the parties' mandates for the escrowed funds as outlined in their Agreement. By advancing escrowed funds under what can only be described as very suspicious circumstances and for purposes not contemplated in the Agreement or arising out of the transaction between Penklor and Mrs. Buehler, Mid South breached its fiduciary duty to Penklor.

Mid South spends much of its appellate argument on the question of whether the trial court erred in finding breach of duty without the aid of expert testimony outlining the duty of an escrow agent in Shelby County. Based on the foregoing analysis, we conclude that the duty Mid South breached is one of common sense.

As recently discussed by this Court,

any claim . . . may require expert proof

> when the subject matter requires that the court and jury have the aid of knowledge or experience not held by ordinary witnesses, *Lawrence County Bank v. Riddle*, 621 S.W.2d

- 8 -

735, 737 (Tenn. 1981), and where common knowledge furnishes no criteria for judgment or where proof depends on observation and analysis outside the common experience of jurors, expert testimony is required to establish the proof.

*Hall v. State*, No. E2004-01635-CCA-R3-PD, 2005 WL 2008176, at *30 (Tenn. Crim. App. Aug. 22, 2005), *perm. app. denied* (Tenn. Dec. 19, 2005). Thus, when

> Issues . . . are not subject to an intelligent determination simply on the basis of deductions made and inferences drawn from ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life . . . the testimony of a witness with special knowledge and skill is required in order to arrive at an intelligent conclusion.

*Id*. (quoting *Lawrence County Bank*, 621 S.W.2d at 737); *see also* Tenn. R. Evid. 702 (stating that expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue"). However, "[i]f the finder of fact can comprehend the subject of expertise without expert testimony, then an expert witness is not necessary." *Miller v. Willbanks*, 8 S.W.3d 607, 615 (Tenn. 1999) (citing *Lawrence County Bank*, 621 S.W.2d at 737).

*Jackson v. Burrell*, No. W2018-00057-COA-R3-CV, 2019 WL 237347, *6 (Tenn. Ct. App. Jan. 16, 2019) Stafford, J., dissenting in part). Here, Mid South's breach of fiduciary duty is easily gleaned based on "deductions made and inferences drawn from ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life," and no expert testimony is necessary. In view of the reasons given for the requested $53,000.00, the timing of the Amendment, the lack of any mention of an amendment by Penklor's attorney, and the fact that Penklor had not exercised its right of inspection at the time of disbursement of the escrowed funds, a reasonably prudent business person would have made further inquiry before issuing the check to Mr. Bailey.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Mid South Title Service, LLC, for which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE